Caruthers, J.,
delivered the opinion of the Court.
George House sold to Clendenan a tract of land at four dollars per - acre, and obligáted himself to make *204 title, &c. House filed Ms bill, under the pauper law, to enforce the payment of the balance of the purchase money by the sale of the land. He died before the hearing, and the suit was revived in the name of the complainant, McCoy, as his administrator. Clendenan also died, and the defendant, Broderick, was made defendant as his administrator, and guardian ad litem, of his heirs. Decree passed for the sale of the land for the amount unpaid of the purchase money, which appeared, by the report of the Master, to be $113. From this decree the defendant appealed to this Court, without giving security for costs, but under the pauper law. His affidavit states that, “ Owing to the insolvency of the estate, and the poverty of my wards, I am, as administrator, not able to bear the expenses of the appeal I have prayed from a decree this day pronounced in this Court,” &c.
A motion is now made to dismiss the appeal, upon the ground that an administrator cannot avail himself of the provisions of the act of 1821, ch. 22, for the aid of poor persons, in obtaining their rights in Courts of Justice.
Upon this point there has, perhaps, been, no adjudication, and it is said, the practice has been conflicting. The unprecedented number of cases before us at the present term, and their general character and description, very well sustain the sentiment, expressed so often by counsel, that this humane and beneficent act is liable to great abuse, and has become, in many instances, a sore grievance to whole communities. This abuse of the law should not, however, induce the Courts to disregard the liberal and *205 generous spirit towards the poor, in which it originated, so far as to abridge and restrict its operation, by' a construction too strict and rigid. But, on the other hand, we should not go beyond the mandate of the Legislature, and expose society to the evils that might result from the application of the act to cases not intended. The Courts have already given to this act a most liberal and enlarged construction. It certainly cannot be charged, that the liberal intention of the Legislature has not been fully carried out, if not somewhat extended, by the Judiciary. We would not depart from, but sustain, former decisions. Yet we do not believe that the act will bear any greater enlargement of operation.
Our act of 1821 was, doubtless, suggested by the English statute of II Henry 7, ch. 12. That act was intended, like ours, to open the Courts to the poor as well as to the rich, when their rights were trampled upon or withheld. But in that act, to guard against abuse, a provision was inserted, that some counsel should certify that he believed the applicant had a good cause of action. This professional opinion, in addition to the affidavit of the party as to his right and his poverty, operated as a check upon vexatious, groundless suits. The éxperience of the Courts demonstrates the reckless spirit with which the most harassing suits are prosecuted under the license of this act, upon the most groundless claims. It may be well for the Legislature to consider whether it would not be wise to prescribe some additional grounds against the abuse of this privilege of suing without expense or risk. There would be no danger in *206 requiring the opinion of an attorney, who had examined the case, to take the responsibility of certifying that he believed the applicant for the benefit of the act had merits. But these are considerations for the Legislature, whenever it shall appear that real abuses exist, and that • the complaints are, therefore, well founded. We must administer the law as it is.
Under the English act, as well as ours, a resort to the act is a personal privilege, and must be by those oidy, whose rights are invaded or withheld. The rights and remedies of a deceased person devolve upon his personal representative by law. If he can claim the benefit of this act, which is a case not presented now, it must be by swearing that he, in consequence of his poverty, is not able to bear the expenses of the suit. It will not do to state that the estate is insolvent, or, in case of a guardian, that his wards are insolvent. If it were held, and perhaps it would be if the case were before us, that a personal representative, or general guardian, could sue as such under the pauper law, it must be upon taking the oath of poverty, &c., in relation to themselves, if not as to the estate they represent, also. But upon this point, we now give no opinion, as the case before us does not require it. It is enough for this case to decide, that the affidavit, grounded upon the insolvency of the estate and his wards, is not sufficient, and the appeal must be dismissed, unless security is now given for the cost. This being done, the next question that arises is upon the action of the Court below upon the motion of defendant, to compel the complainant, McCoy, when the suit was revived in his *207 name, as administrator, upon the death of George House, the original complainant, to give security for costs. The Court refused to make the rule, and, we think, correctly.
The suit had been regularly instituted by House, under the pauper law, and his representative had nothing to do but to prosecute the cause as he found it. We are aware of no rule of practice requiring an administrator or executor, upon the revivor of a suit in his name, to give security for the prosecution of an action already regularly commenced by his testator or intestate.
There is, however, one fatal difficulty in the way of the complainant: He has not brought the heirs of his intestate before the Court. Upon the death of House, the legal title descended to his heirs, and the equitable title to those of his vendee at his death. The latter are brought before the Court, but not the former. The debt for which the land is to be sold, by virtue of the vendee’s lien, belongs to the administrator; but he has no right to collect it by sale of the land, until he can show that he is in a condition to make a good title to the vendee or purchaser. This can only be done by bringing the heirs, who are vested with the legal title, before the Court. Upon this ground alone the decree is reversed, and the cause remanded, with leave to amend by making necessary parties.